New York County.—Hon. D. G. ROLLINS, Surrogate.—January, 1885.

Bliss v. Olmstead.

*In the matter of the estate of* Eliza A. Stebbins, *deceased.*

Testatrix, by her will, after bequeathing, absolutely and in trust, divers preferred pecuniary legacies, amounting to $51,300, directed the executor, in order to satisfy them, to use any bonds or securities she might leave, having a market value not less than par, reckoning the same at par (including accrued interest), without regard to the ruling premium, as if they had been specific legacies, so that all the legatees should receive the same proportional amounts out of her estate; and authorized the executor to retain any securities as trust funds or to sell any thereof for the purposes of distribution.   She left municipal bonds of different cities, commanding a premium in the market, of the par value of $38,500, which the executors sold, and also other securities.—
*Held,* that the preferred legatees were entitled, *pro rata,* to the proceeds of the sales of the $38,500 bonds, with the accrued interest, and the premium realized, and also whatever increase had attached thereto, but not to interest, *eo nomine,* on the proceeds; and that the deficiency,

ascertainable by deducting the par value of such bonds from the aggregate amount of such legacies, was payable as general legacies, with interest, in the respective cases, from the death of testatrix, or from the expiration of one year thereafter, under the ordinary rules.

UPON the judicial settlement of the account of Dwight H. Olmstead, as executor of the will of decedent, he asked the court for an interpretation of the will, in relation to the distribution of the residue. The facts appear in the opinion.

L. D. OLMSTEAD, *for executor.*

THEO. W. DWIGHT, *special guardian of Henry L. Bliss and others, infant legatees.*

THE SURROGATE.—By the clauses in her last will that are numbered from 3 to 13 inclusive, this decedent bequeaths divers legacies. By clauses 13 and 14 she establishes a scheme for discharging those legacies in terms following:

" I direct that all the foregoing bequests shall be paid and satisfied in full in the manner herein provided, and prior to the subsequent bequests made by this will, and to allowances and expenses of administration, which subsequent bequests are to be paid *pro rata* in case of a deficiency of assets to pay them in full. In paying the foregoing legacies, and in setting apart the above mentioned trust funds, my executor shall use any bonds or securities I may leave, the market value whereof is not less than par, together with the accrued interest thereon, reckoning such bonds and securities at their par value (including accrued interest), without regard to the premium on or market value of said bonds and securities, in the

same manner as if they had been specific legacies; that is to say, in case of a bequest to any legatee above named equal to the par value of one or more bonds, said bonds, with the interest accrued thereon, shall be turned over and given to such legatee in satisfaction of such bequest, and the distribution of bonds and payments shall be such that all my aforesaid nephews and nieces and *cestuis que trust* shall receive the same proportionate amounts out of my estate, according to the foregoing bequests to them or for their benefit respectively, and my said executor shall be at liberty to retain any such bonds or securities as he may select for the trust funds until the termination of said trust, or to sell any bonds for the purpose of making such distribution."

It seems clear to me that, by virtue of the provisions just quoted, the executor of this estate is authorized—if, indeed, he is not absolutely required—to discharge, so far as may be, all legacies bequeathed in clauses preceding clause 14, by one or the other of two methods: 1st, by the actual turning over to the beneficiaries of bonds that have a market value at or above par; or, 2d, by turning over the proceeds of such bonds, in the event that the executor may have seen fit to convert them into money for convenience of distribution.

The preferred legatees, to the extent that their bequests can be satisfied by the direct use of such securities as are applicable to their satisfaction, or by using the proceeds of such securities are, in effect, legatees of specific legacies, and are entitled, as such, to whatever, by way of increment, may have become

attached to such legacies at the time of their discharge. As I read this will, the testatrix substantially says to her executor: " If you shall find in my estate bonds or securities worth their par value or more than that, apply them, as far as they will reach, in satisfaction of the preferred legacies, or, if you choose, sell them and apply their proceeds. Do this, however, in such fashion that no one of the preferred legatees shall fare better than his fellows; and that the employment of securities, or proceeds of securities, in satisfaction of the preferred legacies as a class, shall operate to discharge such legacies to the extent of the par value of such securities only, however largely in excess of such par value their real or market value may chance to be."

Now, it appears that decedent left, at her death, certain bonds of municipal and railroad corporations, and certain promissory notes secured by mortgages. Of those bonds a portion were worth less than par. They are not, therefore, " such bonds or securities" as are referred to in clauses 13 and 14. Nor do the promissory notes fall within that category. The total value of all the bonds and securities specially applicable to the discharge of the preferred legacies is $38,500, made up of the items following: New York city bonds, $24,500 ; Holyoke and Westfield bonds, $10,000; New Haven and Northampton bonds, $4,000.

The bequests to the preferred legatees are, in the aggregate, $51,300. In partial satisfaction of this last named sum, i. e., to the amount of $38,500, I hold that the proceeds realized by the executor, from

the sale of the bonds above enumerated, may properly be applied.

The preferred legatees are entitled, *pro rata,* to all such proceeds, including not only the income that had accrued upon the bonds when sold, but also the liberal premium that they then commanded, in the same manner and with the same effect as if the legacies had been, in the strictest sense, specific legacies of the bonds themselves. And I further hold that, as to this $38,500, the preferred legatees are not entitled to interest, *eo nomine.* They have no better claim, it seems to me, than they could have maintained, in case such bonds had, in terms, been specifically bequeathed, and it has been repeatedly decided that the legatee of a specific bequest is not entitled to interest as such. Whatever produce may have actually accrued upon his legacy belongs to him; no more and no less (Murphy v. Marcellus, 1 *Dem.,* 288; Platt v. Moore, *id.,* 191, *and cases cited*).

It has been stated already that the total amount of the preferred legacies is $51,300. A deduction therefrom of the par value of the bonds applicable to their discharge ($38,500) leaves remaining the sum of $12,800. To the extent of this $12,800, the bequests in question are simply general legacies, differing from those that follow the 14th clause in this circumstance alone, that they command priority of payment. Such of them as are given in trust for the support and maintenance of *cestuis que trust* are entitled to interest from the death of the testatrix (Nahmens v. Copely, 2 *Dem.,* 253). The others are entitled from a year later, and so, too, are all the unpreferred

legacies, except the trust provision for the benefit of Cloe Bates Sackett, which is allowed interest from decedent's death.